1  LATHAM & WATKINS LLP
   Katherine A. Lauer (Bar No. 138010)
2     *katherine.lauer@lw.com*
   Amy E. Hargreaves (Bar No. 266255)
3     *amy.hargreaves@lw.com*
   12670 High Bluff Drive
4     San Diego, CA 92130
   Telephone: (858) 523-5400
5     Facsimile: (858) 523-5450

6  Steven M. Bauer (Bar No. 135067)
   *steven.bauer@lw.com*
7  505 Montgomery Street, Suite 2000
   San Francisco, CA 94111
8  Telephone: (415) 391-0600
   Facsimile: (415) 395-8095

*Attorneys for Defendants Sutter Health and Palo Alto Medical Foundation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KATHY ORMSBY,<br><br>                Plaintiff,<br><br>      v.<br><br>SUTTER HEALTH and PALO ALTO MEDICAL FOUNDATION,<br><br>                Defendants. | Case No. 3:15-cv-01062-LB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT**<br><br>Date: October 24, 2019<br>Time: 9:30 a.m.<br>Courtroom: Courtroom C, 15th Floor<br><br>Hon. Laurel Beeler |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 24, 2019 at 9:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable Laurel Beeler, Magistrate Judge, United States District Court for the Northern District of California, in the San Francisco Courthouse, Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Sutter Health and Palo Alto Medical Foundation ("Defendants") will and hereby do move this Court for an order dismissing Relator's First Amended Complaint ("Relator's Complaint") (ECF No. 52). This motion is brought on the grounds that: the Relator fails to allege false claims or unlawfully retained overpayments under Medicare Advantage's comparative standard; the False Claims Act does not permit a relator to pursue additional claims after the government intervenes in the action; and Relator's Complaint fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Defendants' Motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, all pleadings and papers in this action, and any oral argument of counsel.

Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Relator's Complaint in its entirety for failure to state a claim upon which relief can be granted.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND BACKGROUND ..................................................................... 1

II. ARGUMENT .................................................................................................................. 3

    A. Relator May Not Pursue Additional Claims After the Government Has Intervened ................................................................................................... 3

    B. Relator's Complaint Fails To Satisfy Rule 9(b)'s Particularity Requirement ........................................................................................................ 6

III. CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Becker v. Tools & Metals, Inc.*,
  Nos. 3:05-cv-0627, 3:05-cv-2301, 2009 WL 855651 (N.D. Tex. Mar. 31, 2009) .................................................................................................................................. 5

*United States ex rel. Bennett v. Biotronik, Inc.*,
  876 F.3d 1011 (9th Cir. 2017) ................................................................................................ 4, 6

*United States ex rel. Brooks v. Stevens-Henager College, Inc.*,
  359 F. Supp. 3d 1088 (D. Utah 2019) ..................................................................................... 5, 7

*United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ..................................................................................................... 8

*Fed. Recovery Servs., Inc. v. United States*,
  72 F.3d 447 (5th Cir. 1995) ......................................................................................................... 6

*United States ex rel. Feldman v. City of New York*,
  808 F. Supp. 2d 641 (S.D.N.Y. 2011) ......................................................................................... 6

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.*,
  918 F. Supp. 1338 (E.D. Mo. 1996) ............................................................................................ 6

*United States ex rel. Swoben v. United Healthcare Insurance Co.*,
  848 F.3d 1161 (9th Cir. 2016) ...................................................................................... 7, 8, 9, 10

*United States ex rel. Lee and Mshuja v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ....................................................................................................... 8

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) .................................................................................................. 7, 8

**Statutes**

31 U.S.C. § 3730(b)(4) .................................................................................................................... 2

31 U.S.C. § 3730(b)(4)(B) .............................................................................................................. 4

31 U.S.C. § 3730(c)(1) ................................................................................................................ 4, 5

**Rules**

Fed.R. Civ. P 9(b) ................................................................................................................... 3, 7, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND BACKGROUND[1]

Qui tam relator Kathy Ormsby ("Relator") filed this False Claims Act case under seal in 2015.  *See* Complaint For Violations Of False Claims Act, ECF No. 1.  According to her allegations, Relator was employed at the time at defendant Palo Alto Medical Foundation ("PAMF"), an affiliate of defendant Sutter Health ("Sutter," and, together with PAMF, "Defendants").  *Id.* ¶ 11.  Ostensibly suing on behalf of the United States, and relying on a since-vacated Medicare Advantage Overpayment Rule, Relator claimed that Defendants had violated the False Claims Act by submitting "diagnosis codes" for patients enrolled in the Medicare Advantage program that she alleged were not properly documented in the patients' medical charts.  *See, e.g.*, *id.* at ¶¶ 41, 44.  Relator focused her allegations on PAMF, but broadly asserted that her allegations were "Sutter-wide."  *Id.* at ¶ 8.  Relator did not, however, name any of Sutter's other affiliates as defendants.

More than three years later, the government decided to intervene in the case, exercising its statutory right to "take over the action" and "conduct[]" it in Relator's place.  31 U.S.C. § 3730(b)(4).  In March 2019, it filed a Complaint-in-Intervention.  *See* United States' Complaint-in-Intervention, ECF No. 41.  As did Relator, the government alleges that Defendants had submitted unsupported diagnosis codes and, in connection with those alleged submissions, had violated the False Claims Act.  *See, e.g.*, *id.* at ¶¶ 10-11.  The government does *not* allege that False Claims Act violations occurred at Sutter affiliates other than PAMF.

The following month, Relator filed a new First Amended Complaint of her own.  *See* First Amended Complaint For Violations Of The False Claims Act, ECF No. 52 ("Relator's Complaint").  Notwithstanding the fact that the government has "take[n] over the action," 31 U.S.C. § 3730(b)(4), and decided not to pursue any False Claims Act allegations involving Sutter

---

[1] Defendants explain the background of this case, and the Medicare Advantage program more generally, in the separate motion to dismiss the government's Complaint-in-Intervention that we are filing contemporaneously with this motion.  *See* Defendants' Notice of Motion and Motion to Dismiss United States' Complaint-in-Intervention (June 14, 2019).  In order to avoid unnecessarily duplicative briefing, Defendants do not repeat that background material here.

affiliates other than PAMF, Relator purports to maintain claims against Sutter for violations that she alleges occurred at those other affiliates. *See* Relator's Complaint at 1:13-18.  In doing so, Relator acknowledges that Sutter has already identified and returned $30 million in overpayments related to those other affiliates to the government, and that the government has entered into a settlement concerning those overpayments without alleging that they had resulted from violations of the False Claims Act. *Id.* ¶ 7.  Nevertheless, Relator claims that the settlement was inadequate and that Sutter should be liable for additional payments and penalties under the False Claims Act that the government has opted not to pursue.  *See id.*

Defendants explain in our contemporaneously filed motion to dismiss the Complaint-in-Intervention that the theory underlying this entire case—that unsupported diagnosis codes necessarily result in overpayments and False Claims Act liability—is fundamentally misguided. *See* Defendants' Notice of Motion and Motion to Dismiss United States' Complaint-in-Intervention (June 14, 2019).  All of the arguments Defendants have laid out in that motion apply equally to Relator's Complaint.  Rather than repeat those arguments here, Defendants instead incorporate them by reference.[2]

Beyond those shared, fatal flaws, however, are two additional flaws in Relator's Complaint, each of which provides a sufficient basis for dismissal in its own right. *First*, under the False Claims Act, a relator has no right to expand a case to encompass claims broader than the ones the government has chosen to pursue after it has taken over the case.  For that reason, Relator cannot press claims involving Sutter affiliates other than PAMF. *Second*, Relator's attempt to plead claims related to those other affiliates is independently deficient because Relator does not, and cannot, plead those claims with the particularity that Federal Rule of Civil Procedure 9(b) requires.  For those reasons, and the additional reasons set out in Defendants' motion to dismiss the Complaint-in-Intervention and incorporated here, this Court should dismiss Relator's Complaint.

---

[2] Defendants asked Relator and the government to stipulate to consolidated briefing on Defendants' motions to dismiss, with Defendants filing a single 30-page memorandum in support of our motion to dismiss both complaints, Relator and the government each filing 25-page responses, and Defendants filing a single 30-page reply instead of two separate 15-page replies.  The parties were unable to reach agreement on that consolidated approach.

## II. ARGUMENT

### A. Relator May Not Pursue Additional Claims After the Government Has Intervened

After the government filed its Complaint-in-Intervention, Relator filed a new, amended complaint purporting to pursue "allegations of a Sutter-wide fraud." Relator's Complaint 1:13-18. This was improper. Neither the text nor the structure of the False Claims Act authorizes a relator to file an amended complaint that attempts to maintain a broader action after the government has intervened and taken over the suit.

The False Claims Act provides that the government's decision whether to intervene in a case is a decision about whether to "take over the action." 31 U.S.C. § 3730(b)(4)(B). If it "*declines* to take over the action," then "the person bringing the action"—i.e., the relator—"shall have the right to conduct the action." *Id.* (emphasis added). If the government decides to "proceed with the action," however, then the statute directs that "the action shall be conducted by the Government." *Id.* § 3730(b)(4)(A). Under the plain language of the statute, then, the government's intervention is an all-or-nothing proposition—as the Ninth Circuit recently observed, "[t]he statute does not state that the Government may intervene in *part* of the action or as to certain counts or certain claims for relief." *United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1020 (9th Cir. 2017) (emphasis added). And once the government proceeds with the action, the False Claims Act instructs that "it shall have the primary responsibility for prosecuting the action," including the authority to "file its own complaint or amend the complaint of [the relator] to clarify or add detail to the claims in which the Government is intervening and to add any additional claims . . . ." 31 U.S.C. § 3730(c)(1). This means that whatever the government decides to do—add, drop, settle, or dismiss claims—it is the government's decision that sets the scope of the action that ultimately goes forward.

To be sure, a relator retains "the right to continue as a party to the action," *id.* § 3730(c)(1), including the right to 15 to 25 percent of any monetary reward recovered by the government, *id.* § 3730(d)(1). But there is nothing in the text of the False Claims Act that grants a relator the right to expand, amend, or supplement portions of "the action" after the government

1  has "taken over" the suit. *See United States ex rel. Brooks v. Stevens-Henager College, Inc.*, 359
2  F. Supp. 3d 1088, 1096 (D. Utah 2019) ("Nothing in the False Claims Act suggests that a relator
3  could maintain the non-intervened portion of an action, conducting, in essence, his or her
4  separate action.").

5        The district court in *Brooks* identified the unique procedural issues raised when a relator
6  files an amended complaint after government intervention that attempts to expand the scope of
7  the relator's allegations to additional defendants and additional claims. The court, after
8  evaluating the False Claims Act's plain language, structure, and legislative history, and over the
9  objections of the government, found that the False Claims Act precluded the relators'
10 amendments there. *Brooks*, 359 F. Supp. 3d at 1116-27. In what appears to be the first
11 comprehensive consideration of this issue, the court concluded that a relator's "limited right to
12 continue as a party to the action . . . does not allow the relator to amend his or her complaint to
13 add defendants and claims to the Government's action" because "[t]hose rights necessarily
14 belong to the party with the primary responsibility for conducting the action—in this case, the
15 Government." *Id.* at 1116. Once the government intervened, "the Government's complaint in
16 intervention superseded the relators' amended complaint, and any pleading subsequently filed by
17 the relators lacked legal effect." *Id.*

18       Defendants recognize that there are many cases in which courts have allowed relators to
19 litigate individual claims for relief under the False Claims Act after the government intervenes.
20 But in those cases, the government affirmatively declined to intervene in individual claims for
21 relief originally asserted by the relator, while intervening in others, or affirmatively declined to
22 intervene against certain defendants, while prosecuting the action against others. *See Fed.*
23 *Recovery Servs., Inc. v. United States*, 72 F.3d 447, 449 n.1 (5th Cir. 1995) (relator retained
24 authority to proceed against defendant Blue Cross where "[t]he United States elected to intervene
25 in . . . the suit against Crescent City and the individual defendants but declined to intervene
26 against Blue Cross"); *United States ex rel. Becker v. Tools & Metals, Inc.*, Nos. 3:05-cv-0627,
27 3:05-cv-2301, 2009 WL 855651, at *9 (N.D. Tex. Mar. 31, 2009) (allowing relator to proceed on
28 a False Claims Act conspiracy claim against an individual because "[t]he government

specifically declined to intervene in 'relator['s] conspiracy allegations under section 3729(a)(3)'"); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1346-47 (E.D. Mo. 1996) (relator permitted to pursue three claims for relief that the government declined to pursue).

Not so here. In this case, the government's notice of intervention explained that it was intervening in the "action," and that it would "file its own complaint against Defendants Sutter Health and Palo Alto Medical Foundation . . . and potentially affiliated entities." ECF No. 26 at 2. It subsequently filed a Complaint-in-Intervention against Sutter Health and Palo Alto Medical Foundation, alleging the same claims for relief as those alleged in Relator's original complaint (as well as two additional claims). Therefore, this is not a case of "partial intervention" such that the Relator is now litigating against certain defendants, or pursuing certain claims for relief, that the government declined to pursue. And where, as here, the government intervenes as to the whole case, the relator's complaint is "superseded in its entirety" and must be dismissed. *See, e.g.*, *United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 648-49 (S.D.N.Y. 2011) (holding that a relator's amended complaint was "superseded in its entirety" by the government's complaint where the government asserted "the same causes of action under the FCA as [the relator]" and where the two complaints were "predicated on nearly identical factual allegations of wrongdoing").

Allowing a relator to second-guess the government's choice about how to prosecute the case after the government has intervened would be inconsistent with a core principle of the statute: the government's prerogative to dictate the litigation. *Qui tam* actions are, by definition, brought in the name of the government, and once the government intervenes, it "take[s] over the action," *Bennett*, 876 F.3d at 1013, and the relator's role as proxy is complete. It would be an odd construction of the statute that allowed the government's "take over" of the action to coexist alongside a relator's independent decision to pursue individual portions of the action by separate complaint. Indeed, "[t]he Government would not have primary responsibility for conducting the action if, after the Government files a complaint in intervention, a relator's complaint remained

operative and the relator retained the right to amend that complaint, adding parties and claims to the Government's action." *Brooks*, 359 F. Supp. 3d at 1121.

Applying those principles here is straightforward. The government's Complaint-in-Intervention asserts the same claims for relief under the False Claims Act as Relator's original complaint (as well as two additional common law claims), and the two complaints are premised on nearly identical factual allegations. Although Relator states that her amended complaint is meant to highlight "allegations of a Sutter-wide fraud," Relator's Complaint at 1:13-18, Relator did *not* assert any claim for relief, or name any defendant, that the government has declined to pursue. Rather, she has filed a separate complaint that, in effect, adds claims against additional Sutter affiliates not named as defendants in her original action in an attempt to leverage the government's separate settlement with those affiliates into False Claims Act penalties. As the *Brooks* decision makes clear, that purpose is categorically invalid. Accordingly, Relator's Complaint should be dismissed in its entirety, without leave to amend.

**B.    Relator's Complaint Fails To Satisfy Rule 9(b)'s Particularity Requirement**

Relator's attempt to broaden her allegations beyond the case the government has chosen to pursue fails for an additional reason as well: Relator has not satisfied Rule 9(b)'s heightened pleading standard with respect to those additional allegations.

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In a False Claims Act case, "[t]his means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement and why it is false." *United States ex rel. Swoben v. United Healthcare Insurance Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Relator's Complaint fails to meet that standard in multiple ways.

*First*, it fails to differentiate among Sutter's various non-PAMF affiliates—which are not even named as defendants—and fails to specifically link these affiliates to the alleged fraudulent scheme, as Rule 9(b) requires. Instead, Relator re-asserts the alleged fraud purportedly witnessed at PAMF, and suggests that because "other affiliates" were under similar pressure to

increase the number of diagnosis codes they were collecting and experienced similar audits, then these affiliates must all have engaged in the same alleged fraud. *See* Relator's Complaint ¶¶ 6, 68, 73-78, 85, 99. But merely alleging fraud at PAMF and suggesting that other affiliates must have been involved in the same sorts of practices is not sufficient. As the Ninth Circuit has repeatedly held, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swoben*, 848 F.3d at 1184 (quoting *United States ex rel. Lee and Mshuja v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011)). Relator's Complaint, which purports to "identif[y] a general sort of fraudulent conduct [at PAMF] but specifies no particular circumstances of any discrete fraudulent statement [at other affiliates], is precisely what Rule 9(b) aims to preclude." *United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011).

*Second*, Relator's Complaint fails to allege either actual false claims or statements by any non-PAMF affiliate, or even "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" at those other affiliates. *Ebeid*, 616 F.3d at 998-99. For example, Relator does not identify a single allegedly unsupported diagnosis code submitted by a non-PAMF affiliate; does not identify a single patient at a non-PAMF affiliate whose diagnosis codes were allegedly unsupported; and does not allege a single alleged overpayment identified at a non-PAMF affiliate that was not properly returned. Relator attempts to overcome this fatal deficiency by relying on generalized allegations that "Sutter's goal was to raise the PAMF RAF [("Risk Adjustment Factor")] score by 28%," Relator's Complaint ¶ 57, and that there was a "Sutter-wide effort to increase RAF scores across all affiliates," *id*. ¶ 68. But Relator notably fails to allege any particularized facts about the "RAF score" trend for non-PAMF affiliates, nor does Relator offer any particularized allegations to show that efforts to increase risk scores at other Sutter affiliates were pursued through illegitimate means rather than indisputably permissible means, such as training doctors to do a better job of accurately capturing diagnosis codes during face-to-face patient encounters.

Relator also alleges that there were no Sutter-wide policies to advance best practices in coding and that none of the non-PAMF affiliates had training materials.  Relator's Complaint ¶¶ 109-111, 114.  But these sorts of "[b]road allegations that include no particularized supporting detail do not suffice."  *Swoben*, 848 F.3d at 1180.  Relator never worked for any of Sutter's non-PAMF affiliates, which are spread throughout Northern California, nor does Relator claim to have visited or reviewed records from those affiliates.  And the allegation that Relator's "peers in Sutter's other affiliates" asked to use training materials Relator had produced, Relator's Complaint ¶ 114, demonstrates the opposite of what Relator is asserting—it shows that other affiliates were attempting to ensure coding accuracy, not engage in fraud.

The allegations in Relator's Complaint are all the more deficient in light of her acknowledgment that Sutter and its non-PAMF affiliates have already repaid the government $30 million, reflecting their conclusion about the scope of possible overpayments at those non-PAMF affiliates.  Relator's Complaint ¶ 147.  That payment shows that Sutter did exactly what Relator alleges it was supposed to:  Once it identified unsupported diagnosis codes related to cancer, fracture, stroke, and heart attack—the "exact medical conditions" Relator alleged had been improperly coded—Sutter and the non-PAMF affiliates returned the $30 million in payments they determined had been associated with those codes.  *Id*.

Given Relator's acknowledgment that Sutter did, in fact, return potential overpayments after they had been identified at its non-PAMF affiliates, Relator's pleading burden in connection with those other affiliates is particularly high.  Because of that admission, it would not be enough for Relator to point to just one or two examples of unsupported diagnosis codes that were collected at non-PAMF affiliates and submitted to the Medicare Advantage program—though Relator does not even do that.  She would need to offer particularized allegations showing that (1) Sutter's non-PAMF affiliates submitted unsupported diagnosis codes that resulted in *more than $30 million* in overpayments (and therefore Sutter and the non-PAMF affiliates cannot have returned those overpayments through the settlement) or that (2) the overpayments that Sutter did identify and return at its non-PAMF affiliates had been identified and improperly retained for more than 60 days before they were returned.

Relator offers no such allegations. Although she alleges that the average monthly Medicare Advantage premiums in counties served by Sutter were significant, and concludes that "Sutter's campaign to raise its risk adjustment score by 20% would convert to roughly $100 million dollars in extra Medicare payments every year for Sutter," Relator's Complaint ¶ 169, Relator does not allege with particularity a single unsupported diagnosis code submitted at Sutter's non-PAMF affiliates (let alone allege, as she must, that the rate at those non-PAMF affiliates exceeded the rate of unsupported codes in the traditional Medicare program, *see* Defendants' Notice of Motion and Motion to Dismiss United States' Complaint-in-Intervention at 12-15). Indeed, while she makes general allegations about a 20% *goal* in Sutter's "campaign to raise its risk adjustment score" at the non-PAMF affiliates, she does not even offer any allegations about whether and to what extent risk scores at the non-PAMF affiliates actually increased. Without that sort of requisite "particularized supporting detail" for her allegations, *Swoben*, 848 F.3d at 1180, Relator's claims cannot proceed.

## III.  CONCLUSION

Relator's Complaint rests on an outdated interpretation of the Medicare Advantage program that has been found invalid by multiple courts—as Defendants explain in their motion to dismiss the Complaint-in-Intervention. And as this motion has separately explained, Relator's attempt to expanded this case after the government's intervention is procedurally improper and substantively deficient for other reasons, too. For any or all of those reasons, the Court should dismiss Relator's Complaint.

DATED: June 14, 2019

By: */s/* Katherine A. Lauer

LATHAM & WATKINS LLP
Katherine A. Lauer (Bar No. 138010)
*katherine.lauer@lw.com*
Amy E. Hargreaves (Bar No. 266255)
*amy.hargreaves@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Steven M. Bauer (Bar No. 135067)
*steven.bauer@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Attorneys for Defendants Sutter Health and Palo Alto Medical Foundation*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

10

DEFENDANTS' MOTION TO DISMISS
RELATOR'S FIRST AMENDED COMPLAINT
3:15-CV-01062 LB