LATHAM & WATKINS LLP
  Katherine A. Lauer (Bar No. 138010)
    *katherine.lauer@lw.com*
  Jason M. Ohta (Bar No. 211107)
    *jason.ohta@lw.com*
  Amy E. Hargreaves (Bar No. 266255)
    *amy.hargreaves@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Steven M. Bauer (Bar No. 135067)
    *steven.bauer@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Attorneys for Defendants Sutter Health and Palo Alto Medical Foundation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KATHY ORMSBY,<br><br>Plaintiff,<br><br>v.<br><br>SUTTER HEALTH and PALO ALTO MEDICAL FOUNDATION,<br><br>Defendants. | Case No. 3:15-cv-01062-LB<br><br>**DEFENDANTS' NOTICE OF MOTION AND UNOPPOSED MOTION TO STAY PROCEEDINGS**<br><br>Date: May 7, 2020<br>Time: 9:30 a.m.<br>Courtroom: Courtroom C, 15th Floor<br><br>Hon. Laurel Beeler |

# NOTICE OF MOTION AND UNOPPOSED MOTION TO STAY

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 7, 2020, or as soon thereafter as the parties may be heard, before the Honorable Laurel Beeler, Magistrate Judge, United States District Court for the Northern District of California, in the San Francisco Courthouse, Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Sutter Health ("Sutter") and Palo Alto Medical Foundation (collectively, "Defendants") will and hereby do move this Court for an order staying the proceedings in this case until May 29, 2020. As detailed below, Sutter has mobilized and redeployed its resources, facilities, and personnel—including its in-house attorneys—to respond to the COVID-19 public health crisis. Sutter's focus on responding to COVID-19 and preparing for the anticipated surge of patients will divert its attorneys and other key personnel away from this litigation, thereby severely compromising Sutter's ability to engage in the critical litigation management activity needed to defend itself effectively.

Defendants' Motion is based on this Notice of Motion and Motion to Stay, the following Memorandum of Points and Authorities, the Declaration of Florence L. Di Benedetto filed concurrently herewith, all pleadings and papers in this action, and any oral argument of counsel.

Defendants seek an order staying this case in its entirety until May 29, 2020. Defendants also request that the Case Management Conference currently set for April 9, 2020, be continued to June 4, 2020; that the parties' Case Management Conference statement be due on May 29, 2020; and that Defendants' request to certify the Court's March 16, 2020 Order for appeal, if any, would be due on June 1, 2020.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUE TO BE DECIDED

The sole issue to be decided is whether the Court should stay this case for sixty days, until May 29, 2020, in light of the COVID-19 public healthcare emergency, the consequent extreme demands placed on Defendant Sutter Health ("Sutter") to mobilize and redeploy its personnel (including its attorneys), resources, and facilities in response, and the resulting adverse impact on Sutter's ability to engage in critical litigation management activity and defend itself effectively.

## II. FACTUAL BACKGROUND

The COVID-19 pandemic is a rapidly unfolding global health crisis, the scale of which is yet unknown. President Trump has declared a National Emergency, and the President's Coronavirus Guidelines for America urge Americans to avoid social gatherings of more than ten people.[1] In California, the situation is particularly dire: earlier this month, California Governor Gavin Newsom declared a State of Emergency,[2] and on March 19, 2020, issued a stay-at-home order for the entire state, ordering "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."[3] As of March 28, 2020, there were more than 4,600 identified positive COVID-19 cases in California, and 101 deaths, but officials have said that the number of cases is a gross underestimation due to the lack of tests for the virus.[4]

---

[1] President's Coronavirus Guidelines for America, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last visited March 30, 2020).

[2] *See* Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19 (March 4, 2020), https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19.

[3] Executive Order N-33-20 (March 19, 2020), https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.

[4] State Officials Announce Latest COVID-19 Facts, California Department of Public Health (March 28, 2020), https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-036.aspx; Alex Wigglesworth et al., *California coronavirus death toll rises to 35, including five in L.A. County*, LA Times (March 22, 2020), https://www.latimes.com/california/story/2020-03-21/california-coronavirus-deaths-rise-to-24-as-hospitals-brace-for-flood-of-patients.

Beyond the general cessation of most activity outside of the home, the COVID-19 pandemic poses significant and unprecedented challenges to the United States healthcare system. As cases rise in the United States, hospitals and healthcare providers like Sutter are on the front lines preparing to face overwhelming medical needs in the weeks and months to come.[5] Dr. Anthony Fauci, the nation's leading expert on infectious diseases, has said that the pandemic could kill 100,000 to 200,000 Americans and infect millions.[6] The result could be an American healthcare system forced to contend with formidable logistical and ethical issues unlike any the country has previously experienced. In California, Governor Newsom has predicted that the state will need an additional 50,000 hospital beds to accommodate the coming influx of coronavirus patients.[7] Emergency measures at California hospitals are already in progress, such as discharging patients whose needs are deemed "noncritical" and exploring options for desperately needed additional facility space.[8]

The Northern District of California has recognized the need to adapt to the unique public health emergency posed by COVID-19. On March 16, 2020, the District issued General Order No. 72, stating that no civil or criminal trial will be commenced before May 1, 2020, and that all civil matters will be decided on the papers, or if the assigned judge believes a hearing is necessary, the hearing will be by telephone or videoconference.[9] On March 23, 2020, the

---

[5] *See* Anna Maria Barry-Jester, *A View From The Front Lines Of California's COVID-19 Battle*, Kaiser Health News (March 18, 2020), https://khn.org/news/a-view-from-the-frontlines-of-californias-covid-19-battle.

[6] Bobby Allyn, *Fauci Estimates That 100,000 To 200,000 Americans Could Die From The Coronavirus*, NPR (March 29, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/29/823517467/fauci-estimates-that-100-000-to-200-000-americans-could-die-from-the-coronavirus.

[7] *See* Katie Paul and Dan Whitcomb, *California governor says state needs 50,000 more hospital beds*, Reuters (March 23, 2020), https://www.reuters.com/article/us-health-coronavirus-california-governo/california-governor-says-state-needs-50000-more-hospital-beds-idUSKBN21B00V; *California Scrambling to Obtain Virus Protection Gear*, NY Times (March 24, 2020), https://www.nytimes.com/aponline/2020/03/24/business/ap-us-virus-outbreak-california.html.

[8] *See* Thomas Fuller, Tim Arango and Jo Becker, *As Coronavirus Cases Add Up, California Frantically Counts Tests, Beds and Masks*, NY Times (March 23, 2020), https://www.nytimes.com/2020/03/23/us/california-coronavirus-testing-masks.html.

[9] United States District Court for the Northern District of California, General Order No. 72 (March 16, 2020), https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_72_3-16-2020.pdf.

District issued a second general order, General Order No. 73, announcing that the San Jose Courthouse will be closed entirely due to a report that an individual infected with the coronavirus had been on the premises, and that all other courthouses in the District will be closed to the public until May 1, 2020.[10]

Sutter's exclusive focus is on responding to this public health emergency by mobilizing and redeploying its resources to prepare for the anticipated surge of patients—a surge which poses a substantial risk of overwhelming California healthcare providers. Sutter recently activated its Sutter Health Emergency Management System ("SHEMS") to redeploy and redirect personnel, resources, facilities and equipment throughout the Sutter Health System in preparation for the impending surge of COVID-19 patients in California. Declaration of Florence L. Di Benedetto (Di Benedetto Decl.) ¶¶ 3, 7, 9. This has required a massive, company-wide effort requiring the support of all Sutter employees to, among other things: (1) ensure that Sutter's facilities and human resources—and most importantly, its nurses, doctors and other patient care providers—are optimally redeployed to treat the anticipated surge of patients, including by ensuring a process to grant emergency privileges for physicians; (2) secure additional PPE, testing equipment, ventilators, and other supplies essential to treating the anticipated surge of patients; (3) drastically expand Sutter's telehealth capabilities; and (4) secure and coordinate emergency funding for Sutter's hospitals. *Id.* ¶¶ 7-8. Sutter's legal team has been a critical part of this effort: Sutter's Senior Vice President and General Counsel, Florence L. Di Benedetto, now serves as one of the Company's rotating SHEMS "Incident Commanders" and works nearly exclusively on operational issues related to Sutter's COVID-19 response, *id.* ¶ 13, while other Sutter attorneys in the Office of General Counsel are focused on the myriad unique legal issues triggered by the COVID-19 emergency, including: issues relating to patient care such as scope of practice and physician privilege issues; labor and employment law issues as Sutter's 55,000 employees operate in this unprecedented environment; hospital and ambulatory licensure issues; and regulatory questions around fraud and abuse issues, billing issues, and privacy issues

---

[10] United States District Court for the Northern District of California, General Order No. 73 (March 23, 2020), https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_73_amended_3-23-2020.pdf.

1  stemming from Sutter's rapid implementation of new service modalities and alternative care
2  sites. *Id.* ¶ 14. Sutter operators and attorneys are also working with the State of California on a
3  potential State lease of Sutter's old California Pacific Medical Center for use as a healthcare
4  facility to provide patient care, and assisting the State in determining how to equip, staff, and
5  operate the facility. *Id.* ¶ 11. The demands presented by this unprecedented public health
6  emergency have severely compromised Sutter's ability to participate in critical litigation
7  management activity—including executive level strategic decision-making, reviewing briefs and
8  pleadings, gathering information and documents, and interviewing witnesses. *Id.* ¶¶ 14, 17.
9  Sutter anticipates that this disruption will only become more acute in the coming months. *Id.* ¶
10 14.

## III. ARGUMENT

A stay of all proceedings is necessary to enable Sutter to execute a system-wide mobilization, redeployment, and reconfiguration of its personnel, resources, and facilities to meet the demands of this unprecedented crisis. The requested stay would include, but not be limited to, discovery deadlines, case management conferences, and any requests that Defendants might file to certify the Court's March 16, 2020 Order for interlocutory appeal under 28 U.S.C. § 1292(b), until May 29, 2020. The Government and the Relator do not oppose this motion.

The parties have agreed that, notwithstanding the stay of proceedings, they will work together in good faith to negotiate an appropriate protective order, an electronically stored information (ESI) protocol, and a clawback agreement during the stay period. If the Court grants the unopposed motion, the parties request that the Case Management Conference, currently set for April 9, 2020, be continued to June 4, 2020; that the parties' Case Management Conference statement be due on May 29, 2020; and that Defendants' request to certify the Court's March 16, 2020 Order, if any, would be due on June 1, 2020. Defendants reserve the right to seek additional relief from the stay period and these proposed deadlines based on the evolving circumstances of the COVID-19 pandemic. The Government and the Relator reserve the right to oppose any request by Defendants for additional time.

To evaluate whether to stay an action, a court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay." *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005)). This includes balancing: "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1260 (N.D. Cal. 2019) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1100 (9th Cir. 2005)). The balance of factors favors a stay here.

*First*, Plaintiffs will not suffer any prejudice from a short, sixty-day stay of these proceedings. No party discovery has been taken, and only motions to dismiss have been decided. Indeed, the parties have not yet participated in an initial case management conference. Moreover, to protect against any undue delay, the parties have agreed to negotiate basic case management agreements during the stay that do not require significant input by Sutter's Office of General Counsel, including a protective order, an ESI protocol, and a clawback agreement—meaning that Plaintiffs will be able to send offensive discovery immediately upon the stay being lifted. Finally, Plaintiffs do not oppose the stay, a factor that reinforces the conclusion that Plaintiffs will not suffer any harm.[11] *See East Bay Sanctuary Covenant v. Trump*, 2019 WL 1048238, at *2 (N.D. Cal. Mar. 5, 2019). Therefore, these factors weigh in favor of granting a stay.

*Second*, Defendants will suffer significant hardship if required to go forward with this case at this time, due to the unprecedented time, personnel, and resource constraints imposed on Sutter as it focuses exclusively on responding to the COVID-19 crisis. In response to the crisis, Sutter recently activated the Sutter Health Emergency Management System, which coordinates

---

[11] Plaintiffs do not oppose the stay and recognize the importance of responding to the COVID-19 pandemic, however, Plaintiffs take no position as to Sutter's factual assertions. Further, Plaintiffs expect the parties to negotiate future scheduling to ensure adequate time to conduct discovery once the stay is lifted.

and directs a round-the-clock planning effort to secure additional protective gear, testing equipment, ventilators, and other supplies essential to treating the anticipated surge of COVID-19 patients. Di Benedetto Decl. ¶¶ 8, 9. Sutter is also redeploying its nurses, doctors, and other patient care providers to treat the anticipated surge of patients, while also undertaking planning to reconfigure its hospitals and other facilities, such as ambulatory surgery centers, and working to expand its critical care bed capacity. *Id.* ¶¶ 8, 10. These emergency response efforts have required Sutter to focus all of its resources, personnel, and attention on preparing to meet critical patient care demands as California, and the nation, brace for a major spike in coronavirus cases in the coming weeks. *See id.* ¶¶ 12, 13.

Sutter's legal personnel have played, and will continue to play, a critical role in these crisis planning efforts. For example, Sutter's Senior Vice President and General Counsel, Florence L. Di Benedetto, now works nearly exclusively on operational issues related to Sutter's COVID-19 response and will do so for the foreseeable future. *Id.* ¶ 13. Her day-to-day legal work has largely been suspended during this emergency. *Id.* Other attorneys in Sutter's Office of the General Counsel ("OGC") have similarly been forced to redirect their attention to preparing to meet the anticipated demand of the COVID-19 emergency, including OGC attorneys who routinely manage litigation and require strategic litigation direction from Sutter's Executive Leadership Team. *Id.* ¶ 14. OGC attorneys have been redirected to address the myriad unique legal issues triggered by the COVID-19 emergency, including, but not limited to: (1) significant legal issues relating to patient care, such as scope of practice and physician privilege issues; (2) labor and employment law issues involving Sutter and its workforce of approximately 55,000 employees; (3) contractual issues triggered by these emergency circumstances; (4) hospital and ambulatory licensure issues; and (5) regulatory questions around fraud and abuse issues, billing issues, and privacy issues stemming from Sutter's rapid implementation of new service modalities and alternative care sites. *Id.* ¶ 14. As a result of this redeployment of Sutter's legal apparatus and executive management team to focus on COVID-19 response efforts, Sutter's ability to perform critical litigation management activity—including executive level strategic decision-making, reviewing briefs and pleadings, gathering information

and documents, and interviewing witnesses—has been severely compromised. *Id.* ¶ 17. Therefore, requiring Sutter to go forward with this litigation at the present time presents a significant "hardship or inequity" that will impact Sutter's ability to prosecute an effective defense. This factor strongly favors a stay.

*Third*, the "orderly course of justice factor" favors a stay. The requested sixty-day stay is necessary so that Sutter can defer focusing on the litigation while it confronts the COVID-19 emergency and resume the litigation after the current crisis resolves. Proceeding with the case during the crisis will not simplify any "issues, proof, [or] questions of law," but instead may "complicate" them later. Among other things, Defendants would need to request—and the Court would be asked to consider—piecemeal extensions of upcoming deadlines in the event the stay is denied. Discovery also would be inefficient and likely delayed, as many of the individuals whose input, information and resources would enable Sutter to respond would be focused on Sutter's COVID-19 response and therefore unavailable.

In sum, the balance of factors favors staying this case for sixty days, until May 29, 2020.

## IV. CONCLUSION

For the foregoing reasons, Defendants requests that the Court grant Defendants' unopposed motion to stay and stay all proceedings in this case until May 29, 2020.

DATED: March 31, 2020

By: /s/ *Jason M. Ohta*
LATHAM & WATKINS LLP
Katherine A. Lauer (Bar No. 138010)
*katherine.lauer@lw.com*
Jason M. Ohta (Bar No. 211107)
*jason.ohta@lw.com*
Amy E. Hargreaves (Bar No. 266255)
*amy.hargreaves@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400

Steven M. Bauer (Bar No. 135067)
*steven.bauer@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
*Attorneys for Defendants Sutter Health and Palo Alto Medical Foundation*